UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| THOMAS A. NIKODEM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-270 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review

of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to

supplemental security income (SSI) benefits. On February 14, 2006, plaintiff's father filed an

application for SSI benefits on behalf of the then-minor plaintiff, alleging a September 1, 2004 onset

of disability.[1] (A.R. 78-83). On October 15, 2006, plaintiff reached age eighteen. His claim was

denied on initial review. (A.R. 34, 63-66). On May 2, 2008, plaintiff received a hearing before an

administrative law judge (ALJ) at which he was represented by counsel. (A.R. 574-619). On

October 1, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-33).

---

[1]Plaintiff assaulted his parents and spent time in jail in December 2005 and January 2006
before he was released into the custody of Wedgewood Christian Services. Plaintiff is not eligible
to receive social security benefits for any months he was confined in jail. *See* 42 U.S.C. §
402(x)(1)(A). Further, SSI benefits are not awarded retroactively for months prior to the application
for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir.
2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The
earliest month in which SSI benefits are payable is the month after the application for SSI benefits
is filed. Thus, March 2006 is plaintiff's earliest possible entitlement to SSI benefits.

On January 23, 2009, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On March 23, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ "improperly rejected the opinions of the treating mental health providers, thereby understating the severity of Mr. Nikodem's impairments;"

2. The ALJ committed reversible error when he found that plaintiff did not meet or equal the requirements of any listed impairment; and

3. "Based on the [ALJ's] own finding that Mr. Nikodem has a Marked impairment in social function and the Vocational Expert's testimony that a Marked impairment in dealing with supervisors eliminates all jobs, the [ALJ] improperly denied Mr. Nikodem benefits."

(docket # 9, Plf. Brief at 2, Statement of Issues). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

Plaintiff was seventeen years old on February 14, 2006, when his father filed the application for SSI benefits. The ALJ found that plaintiff had not engaged in substantial gainful

activity on or after his alleged onset of disability of September 1, 2004. Plaintiff reached age eighteen on October 15, 2006. He had the following severe impairments before age eighteen: "a conduct disorder, possible autism or autistic traits/Asperger's disorder, and an affective disorder." (A.R. 20). The ALJ found that plaintiff was not entitled to SSI benefits during this closed period as a child, because he did not have an impairment or combination of impairments which met or equaled the requirements of any listed impairment. (A.R. 20).

The ALJ found that plaintiff had not developed any new impairment or impairments after attaining age eighteen. (A.R. 30). Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (A.R. 30-31). Plaintiff retained the residual functional capacity (RFC) for a full range of work at all exertional levels. (A.R. 51). Plaintiff's mental impairments limited him to performing unskilled work that did not involve frequent contact with the general public, but he could perform work with small, familiar groups. (A.R. 31). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:

> The claimant testified at his hearing that he was 19 years old, single, never married, and he had no children. He completed eleventh grade in school. He was not working. He did speak with someone at Michigan Works about a possible job, but that has not panned out. He also took a two-week class in electrical circuitry/setting alarms, but was not certified or licensed in any trade or occupation. His only past work has been a pizza restaurant in 2006 where he basically just cleaned up, and did similar activities for two or three months. He has not worked since he left the pizza restaurant. He was fired from that job because he was late for shifts secondary to problems with transportation. He was also a volunteer at events like Festival of the Arts in downtown Grand Rapids.

> The claimant had trouble getting along with his parents in the past. He was taken from his parent's home in December 2005 after a fight with his parents where he assaulted them, and spent about 45 days in the Kent County Jail. He was out of jail in January 2006, and was sent to Wedgewood. He was also on probation for a year. He has never gone back to live with his parents. He testified that he had been in some other trouble with the law, including when he broke a window, when he threw a couch, and also for forging someone else's name to a document. He testified that he was more grown up now. Since he has turned 18 years-

of-age, the claimant has been better able to control his anger, and has not shown much in the way of aggressive behavior.

He visits with his parents at his brother's house. In September 2007, he was living in a group home, but now is living in a house where he shares the rent. He gets along with his parents "9 times better" now than in the past. He was planning on changing his living arrangements because the woman he was living with was moving. He was thinking of living in an apartment with his girlfriend.

He testified that he is disabled because of mental problems he had, and he took medications that included Seroquel, Depakote, Navane, Tricor, Sinthrioxadine, and Prilosec OTC. He was no[] longer taking Adderall, having stopped that medication a year and one-half prior to the hearing. He had problems dealing with things when he was frustrated. He also had feelings of guilt and worthlessness, and suicidal thoughts. He had migraine headaches and took extra strength Excedrin when he had a headache. He also used Benadryl, Advair, and Albuterol inhalers for treatment of mild asthma. The medications he took made him sleep until 2:00 p.m. He indicated that he typically went to bed about 10:00 p.m. or 11:00 p.m., but did not go to sleep until 3:00 a.m. because of racing thoughts and his sleeping arrangements.

He weighed 204 pounds, and he was very happy with his height and weight. He had lost 40 pounds in two months. He smoked a pack of cigarettes every three days, and while there was evidence in his record that he drinks alcohol, and uses marijuana, he denied that use at the hearing. He lives in a house with other people (a lady and her son), and splits the rent three ways. He bought his own food from income he [h]as from State disability assistance benefits of $260 a month, and if he went back to work, he would lose that payment. He stated that he had no interest in going back to work. He did not think he could get a job with his limited education background, so he preferred to receive the SDA benefits rather than work. He does not have a car. He took the bus, walked, or used roller blades. He was able to do household chores that included cleaning up around his house. He also shopped for food. He helped his mom with laundry. He walked about a mile and one-half every day. He was a member of a bowling league.

He testified that he had three concussions in the past years and had memory problems as a result. He was placed in Forest View psychiatric hospital in September 2004 for treatment of problems with anger and aggression. He was not attending regular counseling sessions at the time of the hearing.

* * *

In making this [RFC] finding, the undersigned has considered the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms and found them not entirely credible. While there is no question that the claimant has had significant mental problems, particularly when he was under age 18, that involved violence toward his parents and others, destruction of property, aggression, and disobedience, his condition has improved

since attaining age 18. He still has problems with his hygiene, but he conceded at his hearing that he was better as an adult at controlling both his emotions, and his behavior. That is evident from the fact that the claimant ha[s] ha[d] no contact with law enforcement for quite some time. He no longer fights with his parents since leaving their house, and he was able to get along with the woman he lived with and her son. While Dr. Munir noted that since moving out of that woman's house, he has been staying with a friend and sleeping on the floor, and that his condition has worsened, it was also noted that he was more independent.

(A.R. 21-22, 31). Plaintiff did not have past relevant work. (A.R. 32). Plaintiff reached age eighteen on October 15, 2006, and he was nineteen years old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for SSI benefits as an adult, plaintiff was classified as a younger individual. He has a high school education and is able to communicate in English. (A.R. 32). The transferability of jobs skills was not an issue because plaintiff did not have past relevant work. (A.R. 32). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 85,400 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 614-16). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 15-33).

## 1.

Plaintiff argues that the ALJ "improperly rejected the opinions of treating mental health providers, thereby understating the severity of Mr. Nikodem's impairments." (Plf. Brief at 10). Plaintiff emphasizes that Wedgewood Christian Services recommended that his family apply for social security disability benefits. (Plf. Brief at 11)(citing A.R. 290). A suggestion to pursue potential sources of funding for plaintiff's post-jail residential care is not a medical opinion. Psychologist Michael Wolff opined that plaintiff would "likely qualify" for social security benefits.

(A.R. 307). (Plf. Brief at 11). The psychologist's statement is a not a medical opinion. The ALJ was correct when he held that it was entitled to "no weight." (A.R. 32). The issue of disability is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e).

Plaintiff's argument that the ALJ "failed to consider"[2] the recommendations for residential treatment made by Dr. Munir, Psychologist Wolff, Dr. LaBerteuax, and Dr. Haith (Plf. Brief at 11-14) cannot withstand scrutiny. Plaintiff was placed in a residential treatment program at Wedgewood following his incarceration for assaulting his parents. Medical experts made conflicting recommendations regarding whether plaintiff should live with his parents. Plaintiff's parents reported that they would feel "unsafe" if plaintiff attempted to move back home. (A.R. 290). His parents "ha[d] not demonstrated their willingness to try the recommended plan of in-home services before looking into Residential Placement." (A.R. 290). The ALJ considered the January 17, 2006 psychiatric evaluation performed by L'Tanya Haith, M.D., including her recommendation that plaintiff stay at Wedgewood rather than going back home and living with his parents. (A.R. 23, 174-77). The ALJ addressed Psychologist Wolff's recommendation for ongoing residential treatment. (A.R. 23, 300-09, 320-32). He considered the May 7, 2007 psychological evaluation report prepared by Paul LaBerteaux, Psy.D. (A.R. 23-24, 310-12). The ALJ noted that Dr. LaBerteaux "questioned the claimant's ability to live on his own at that time." (A.R. 24). On

_____

[2]"[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Bailey v. Commissioner*, No. 09-6389, 2011 WL 850334, at 8 2 (6th Cir. Mar. 11, 2011) (The ALJ "is not required to analyze the relevance of each piece of evidence individually" because "the regulations state that the decision must contain only 'the findings of facts and reasons for the decision.'") (quoting 20 C.F.R. § 404.953). The ALJ's opinion need not be perfect to withstand appellate review. *See Korneky v. Commissioner*, 167 F. App'x 496, 507-08 (6th Cir. 2006).

January 23, 2008, Dr. Munir expressed his concern that plaintiff had moved out of the foster care home in favor of "living with a friend on the floor." (A.R. 484). He stated that plaintiff may need "more structure in his life than he is willing to cooperate with." (A.R. 484). "He has no basic activity in the daytime." (A.R. 484). Dr. Munir's assessment of plaintiff's condition was as follows: "SUBJECTIVE: Thomas is 19 years old and is not doing good [sic] at all in my clinical opinion." (A.R. 484). The ALJ considered Dr. Munir's opinions, but found that they were not persuasive in light of the record as a whole. (A.R. 31-32). *See Coldiron v. Commissioner*, 391 F. App'x 435, 439-42 (6th Cir. 2010). Among other things, the ALJ noted that plaintiff was independent in his activities of daily life. (A.R. 24). Plaintiff has a normal IQ and better than average intellect. (A.R. 25). He was able to get around town by taking public transportation, inline skating, riding his bike, or walking. (A.R. 26, 588). Plaintiff enjoyed playing video games, watching movies, playing soccer and basketball, hanging out with friends, and dating. (A.R. 25, 468). He worked as a volunteer at crowded public events like Festival in downtown Grand Rapids. (A.R. 581-82). He participated on teams, excelled at bowling, and had a brown belt in karate. (A.R. 25). Plaintiff had no interest in finding a job because it might have an adverse impact on his SDA benefits:

> Q      All right. And then what about employment situations. You haven't been employed since the pizza?
>
> A      Nope.
>
> Q      And do you have any interest in that or doing anything on that or --
>
> A      Not really.
>
> Q      Why is that?

A      Well, right now I really can't work because I'm on SDA so I figure why bother[3] when I can have my SDA shut off.

Q      Um-hum.

A      And then I have to find a new way to pay rent and everything.

* * *

EXAMINATION OF CLAIMANT BY ATTORNEY

Q      Mr. Nikodem, when the judge was asking you about why you haven't tried working, you said that work would put your SDA, your State Disability Assistance benefits at risk.

A      Yes. That's what I've been told.

Q      Well, I think that's probably true although even at minimum wage, you'd make $280 bucks a week as opposed to $260 a month with SDA. Wouldn't you rather have $280 a week rather than $260 a month?

A      No, not really because it's not a sure thing that I can actually get a job because places in Michigan, as you probably hear, aren't really hiring people with no education.

(A.R. 588-91; *see* A.R. 24). The ALJ did not "improperly reject" the opinions of plaintiff's treating medical providers, nor did he understate the severity of plaintiff's impairments. I find that the ALJ correctly applied the law and that his findings regarding plaintiff's functional limitations are supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ committed reversible error when he failed to find that he met or equaled the requirements of listings 112.04 and 112.10 as a child and listings 12.04 and

---

[3]Elsewhere plaintiff indicated that he intended to live off SSI benefits if this claim went through and that it would "be wonderful to just sit back in the evenings after school and watch Pirates of the Carribean." (A.R. 559).

12.10 as an adult. (Plf. Brief at 14-19; Reply Brief at 3-7). The listing of impairments, located at appendix 1 to subpart P of the regulations, describes impairments the Social Security Administration (SSA) considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009).

Plaintiff's brief and reply brief conflate child and adult listing requirements. This is improper and cannot possibly satisfy plaintiff's burden. "There are significant differences between the listings for adults and the listings for children." 20 C.F.R. Pt. 404, Subpt. P, App 1, § 112.00. Further, it is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, No. 09-6328, 2010 WL 5439794, at * 4 (6th Cir. Dec. 30, 2010). Plaintiff has the burden of demonstrating that he meets all parts of the listing. *See Bingaman v. Commissioner*, 186 F. App'x 642, 644-45 (6th Cir. 2006). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. Upon review, I find that there is more than substantial evidence supporting the ALJ's findings that plaintiff did not meet or equal the requirements of any listed impairment as a child or as an adult.

A.     Child's SSI Benefits Claims

The child's SSI benefits portion of plaintiff's claim is limited to the closed eight-month period from February 14, 2006 (the date the application for SSI benefits was filed) to October

15, 2006 (plaintiff's eighteenth birthday).  Under the Work Opportunity Act's standard,[4] a child seeking SSI benefits can establish disability only by showing that he suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations and lasts for a period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  "The thrust of the legislation was most certainly to tighten eligibility."[5]  *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 83 (2d Cir. 2003).  Under the current three-step analysis, the Commissioner must ask:  (1) is the claimant engaged in substantial gainful activity?; (2) are the impairments severe?; and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational requirements?  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; 20 C.F.R. § 416.924a.  As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits.  *See* 20 C.F.R. § 416.924a; *see also Encarnacion*, 331 F.3d at 84; *Miller v. Commissioner*, 37 F. App'x 146, 148 (6th Cir. 2002).

The ALJ's findings that plaintiff did not meet or equal the requirements of any listed impairment as a child are supported by more than substantial evidence.  The ALJ rejected plaintiff's

---

[4] Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

[5] "The standard rationale for this curious-seeming extension of the benefits program for disabled adults is . . . that having a disabled child may limit the amount of productive work that the parents can do, inflicting hardship on families of limited means.  But since disabled children generally do not have a work history, the structure of the disability program for them necessarily differs from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to work; the child is treated the same in such a case. Otherwise the question is whether the child is severely limited in functioning in specified areas of life activity such as concentration and communication, which correspond to activities that adults perform at work.  Thus a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working."  *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006)(citations and internal quotations omitted).

arguments that he met or equaled the requirements of listing 112.04, and the ALJ was never presented with an argument claiming that plaintiff met the requirements of listing 112.10. (*See* Plaintiff's Prehearing Brief (A.R. 132-36) and the administrative hearing transcript (A.R. 574-619)).

1. Listing 112.04

Listing 112.04 is for "mood disorders" characterized by "a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.04. "The required level of severity for these disorders is met when the requirements in both [parts] A and B are satisfied." *Id.* The ALJ found that plaintiff did not meet the requirements of part A or B,[6] and noted that no treating or examining medical professional had offered an opinion that plaintiff met or equaled the requirements of a listed impairment. (A.R. 20).

The ALJ determined that plaintiff did not meet listing 112.04's paragraph B requirements. For children age 3 to attainment of age 18, the listing requires that claimant's mood disorder "result[] in at least two of the appropriate age-group criteria in paragraph B2 of 112.02." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.04(B). Thus, plaintiff was required to prove "marked impairment" in at least two of the following:

(1) age-appropriate cognitive/communicative function;

_____

[6]The ALJ found that it was not necessary to discuss part A requirements. It is common practice for an ALJ to concentrate his or her analysis on one portion of a listing. A claimant must prove that he satisfies both parts A and B, and failure to satisfy either part establishes that the claimant does not meet the requirements of the listing. *See Elam*, 348 F.3d at 125. The ALJ's detailed examination of the severity of plaintiff's impairments is found within the portion of his opinion discussing whether plaintiff equaled the requirements of a listed impairment. (A.R. 20-30).

(2) age-appropriate social functioning;

(3) age-appropriate personal functioning; and

(4) difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2); *see Blaine v. Astrue*, No. 4:09cv104, 2010 WL 3291825, at * 3 (E.D. Va. Aug. 18, 2010). The ALJ found that plaintiff had a marked limitation in social functioning (the domain of interacting and relating with others). (A.R. 26-27). Plaintiff concedes that he did not have a marked impairment in age-appropriate cognitive communicative function. (Plf. Brief at 17). He argues that the ALJ should have found that he had a marked impairment in age-appropriate personal functioning. (*Id.*). Appellate review of the Commissioner's final administrative decision is limited, and substantial evidence is not a particularly demanding standard. *See Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010); *Cruse v. Commissioner*, 502 F.3d 532, 540 (6th Cir. 2007); *Vorholt v. Commissioner*, No. 09-6404, 2011 WL 310700, at * 5 (6th Cir. Feb. 2, 2011) ("The Commissioner's conclusions are subject to a narrow standard of review . . . ."). The standard of review does not permit the reviewing court to try the case *de novo*, resolve conflicts of evidence, or decide issues of credibility. *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see Vorholt*, 2011 WL 310700, at * 7). "Personal functioning" is defined as follows:

> Personal functioning in adolescents pertains to self-care. It is measured in the same terms as for younger children, the focus, however, being on the adolescent's ability to take care of his or her own personal needs, health, and safety without assistance. Impaired ability in this area is manifested by failure to take care of those needs or by self-injurious actions.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(c)(4)(A). Although plaintiff cites evidence on which the ALJ could have based a finding of greater level of functional restriction, the ALJ's finding that

plaintiff had a less than marked limitation in personal functioning (A.R. 28-30) is supported by more than substantial evidence.

       2.     Listing 112.10

      Plaintiff argues for the first time in this appeal that the ALJ should have found that his Asperger's syndrome[7] met or equaled the requirements of Listing 112.10 for "autistic disorder or other pervasive developmental disorders." (Plf. Brief at 15-17). If plaintiff had presented this argument to the ALJ, it would have been rejected. The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment as a child is supported by substantial evidence.

      Part A(1) of listing 112.10 requires medically documented findings of an autistic disorder. Plaintiff concedes that he "does not have autism." (Plf. Brief at 15). Thus, plaintiff could not satisfy part A(1). Part A(2) of the listing applies to "other pervasive developmental disorders." It requires both of the following: "(a) Qualitative deficits in the development of reciprocal social interaction; and (b) Qualitative deficits in verbal and nonverbal communication and in imaginative activity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.10(A)(2). Plaintiff argues that he satisfied these requirements because "Dr. Wolff's [October 31, 2006] testing showed impairments in verbal memory (AR:304), lack of imaginative ability (AR:305), and a history of not interacting effectively with others, lacking awareness of social conventions and lacking empathy. (AR: 305)" (Plf. Brief at 15). Although Wolff's evaluation occurred after plaintiff reached age eighteen, it occurred close

_____

[7]Asperger's syndrome is defined as a "pervasive developmental disorder resembling autistic disorder, being characterized by severe impairment of social interactions and by restricted interests and behaviors, but lacking the delays in development of language, cognitive function, and self-help skills that additionally define autistic disorder. It may be equivalent to a high-functioning form of autistic disorder." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1848 (31st ed. 2007).

enough to plaintiff's eighteenth birthday to be considered an indicator of plaintiff's level of functioning as a child. The results of Wolff's evaluation do not undermine the ALJ's decision. Psychologist Wolff described plaintiff's responses as "curt, but quite candid." (A.R. 303). Plaintiff's "intellectual abilities were within the average range." (A.R. 303). Wolff noted that fluctuation in plaintiff's test scores would occur "depending on his effort and mood stability." (A.R. 303). Plaintiff's verbal memory test scores placed him in the low average range. (A.R. 303). His scores for attention and concentration were in the low average range. (A.R. 304). Plaintiff's mother reported that his "speech and motor milestones seemed to develop without delay." (A.R. 300). Plaintiff was never held back or expelled from school. (A.R. 302). Plaintiff reported having a girlfriend and friends at school. He was a bowling champion and volunteered for events like Festival. (A.R. 302). Plaintiff did not have the qualitative deficits in development of social interaction and qualitative deficits in verbal and nonverbal communication and in imaginative activity necessary to satisfy the requirements of part A(2) of listing 112.10. *See Bradberry v. Astrue*, No. 3:08-cv-350, 2009 WL 2027111, at * 10-11 (M.D. Tenn. July 8, 2009).

The part B requirements of listing 112.10 are identical to listing 112.04's part B requirements. Plaintiff did not meet the part B requirements of listing 112.10 for the reasons stated in the discussion of listing 112.04.

### 3. Plaintiff did not Equal the Requirements of Listings 112.04 or 112.10

By regulation, the ALJ utilizes six domains of functioning to assist in determining whether the combination of a minor's impairments equal the severity of a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with

others; (4) moving about and manipulating objects; (5) ability to care for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity. 20 C.F.R. § 416.926a(d); *see Kelly v. Commissioner*, 314 F. App'x 827, 832 (6th Cir. 2009); *Encarnacion*, 331 F.3d at 85. A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832. An "extreme" limitation is more than a "marked" limitation. An "extreme" limitation is the rating given to the "worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832.

  The ALJ made specific findings with regard to each of the six domains of functioning. He found that plaintiff had no limitation in the domain of acquiring and using information. (A.R. 24-25). Testing indicated that plaintiff has a normal IQ and an average or better intellect. He did not lack the ability to complete his high school education. He did "lack motivation." (A.R. 25). Plaintiff had a less than marked limitation in attending and completing tasks. (A.R. 25-26). Although plaintiff complained about doing his chores and was "sloppy and slothful," he was active on two bowling teams and was a state champion bowler. (A.R. 26). The ALJ found that plaintiff

had no limitation in the domain of moving about and manipulating objects. (A.R. 27-28). He was generally healthy physically and " had no problem doing whatever he wanted to do from a physical standpoint." (A.R. 28). Plaintiff was able to "walk a mile and one-half, at least, ride a bike, and roller blade to get where he wanted to go." (A.R. 28). The ALJ's factual findings in these domains are undisputed.

The ALJ found that plaintiff had a marked limitation in the domain of interacting and relating with others, a less than marked limitation in caring for himself, and no limitation in physical well being. (A.R. 26-30). Plaintiff argues that the ALJ should have found that plaintiff had a higher level of functional limitation in these domains. (Plf. Brief at 18-20). Upon review, I find that the ALJ's factual findings with regard to all the challenged domains are supported by more than substantial evidence:

The ALJ found that plaintiff had a marked limitation in the domain of interacting and relating with others:

> When he was under age 18 he was violent and destructive. As a result he had legal problems, and ended up in jail. He assaulted his parents on more than one occasion, and he was also somewhat violent when he went to school. He actually held a gun to his mother's head at one point, and was physical with his father on more than one occasion. He assaulted school officials, and other students. He had very poor hygiene, making it difficult to interact with other people.

> As Dr. Munir and others at Touchstone pointed out, the claimant had problems asking for assistance between regularly scheduled appointments. He did have some success in dealing with other people, however. He had a girlfriend at one point, and there is no[] report that he had a physical altercation with her. [H]e got along well with friends with whom he went bowling. In reviewing his medical records, the undersigned found that for the most part, the claimant got along well with his treating doctors and counselors. However, overall, the claimant had significant problems dealing with other people prior to age 18.

(A.R. 26-27). Plaintiff argues that the ALJ should have found that he had an extreme limitation rather than a marked limitation in this domain based on his assaultive behavior at school and his serious assaults against his parents. (Plf. Brief at 19). The ALJ's factual finding took into account plaintiff's abhorrent behavior against his parents and his ability to interact appropriately with his girlfriend and other friends on the bowling team. The ALJ's finding that plaintiff had a marked impairment in interacting and relating to others is supported by substantial evidence.

> The ALJ found that plaintiff had a less than marked limitation in caring for himself:

> The most recent notes of Dr. Munir made in connection with the claimant's visits with him showed that the claimant was not doing very well in the doctor's opinion. He was living with a friend, sleeping on the friend's floor. (Exhibit 19F, pp. 1-5)[A.R. 455-60]. He has hygiene issues that continue to this date, as is shown throughout his record, and about which he appears to be unaware, as he testified at his hearing. That was also noted by his history teacher (Exhibit 4E, p.6)[A.R. 105]. It was pointed out that the claimant did not easily ask for assistance between appointments at Touchstone, even when he required something in the interim.

> The State agency psychologist found that the claimant had less than marked limitations in this domain [A.R. 295] and the undersigned agrees.

(A.R. 29). Plaintiff believes that the ALJ should have found a marked limitation in self-care. (Plf. Brief at 29). Courts have noted that inattention to showering, clean clothes, and other hygiene issues are not extraordinary for teenage boys, and that if a turbulent adolescence were sufficient to establish disability, millions more children would be deemed disabled. *See e.g.*, *Johnson v. Astrue*, No. 09-cv-4522, 2010 WL 3893876, at * 7-8 (N.D. Ill. Sept. 30, 2010). Psychologist Schirado's opinion [A.R. 292-99] and other evidence the ALJ summarized in his opinion provide more than substantial evidence supporting his factual finding with regard to the self-care domain.

> The ALJ found that plaintiff had no limitation in the domain of health and physical well-being:

> As noted, above, the claimant does have some mild asthma, and has had some pain in different areas of his body, including headaches. He had x-rays and other diagnostic tests that have shown no physical problem that would in any significant way limit the claimant in his physical activities. His asthma is well controlled with the medication he uses, and he has complained of no significant functional limitation secondary to has asthma.

(A.R. 30). Plaintiff's argument that the ALJ should have found a marked impairment in this domain is patently meritless. (Plf. Brief 19). In this domain, the ALJ was required to consider the "cumulative physical effects" of the impairments and their associated treatments or therapies. 20 C.F.R. § 416.926a. Plaintiff was able to walk more than a mile, skate, play basketball, bowl, and earn a brown belt in karate. The ALJ's finding of no limitation in the domain of health and physical well-being is supported by more than substantial evidence.

Plaintiff did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Thus, his impairments did not equal the requirements of any listed impairment. Accordingly, I recommend that the ALJ's decision finding that plaintiff was not entitled to SSI benefits as a child be affirmed.

B.    Adult Listings 12.04 and 12.10

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet the requirements of adult listings 12.04 for affective disorders and 12.10 for autistic and other pervasive developmental disorders. (Plf. Brief at 14-20). It was plaintiff's burden to prove that he met all the requirements of these listed impairments. *See Rabbers v. Commissioner*, 582 F.3d at 653. The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment.

(A.R. 30-31). Upon review, I find that the ALJ's factual findings are supported by more than

substantial evidence.

"At step three [of the sequential analysis],[8] an ALJ must determine whether the

claimant's impairment meets or is equivalent in severity to a listed mental disorder. The Listing of

Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA

considers to be severe enough to prevent an individual from doing any gainful activity, regardless

of his or her age, education, or work experience. In other words, a claimant who meets the

requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v.*

*Commissioner*, 582 F.3d at 653 (internal quotations and citations omitted). It is well established that

a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348

F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that

listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Elam*, 348 F.3d at 125.

---

[8]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

1.    Listing 12.04

Listings for mental impairments generally begin with paragraph A criteria -- a statement describing the disorder addressed by the listing (a set of medical findings) -- followed by the paragraph B criteria -- a set of impairment-related functional limitations.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Listing 12.04 is one of four mental impairment listings containing paragraph C criteria (a second set of impairment-related functional limitations).  *Id.*  "The requirements in paragraphs B and C describe impairment related functional limitations that are incompatible with the ability to do any gainful activity."  *Id.*  A claimant meets the requirement of the listing for affective disorders  "when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Plaintiff has been diagnosed with an affective disorder, and it is assumed for present purposes that he met the part A criteria.  He did not satisfy the part B or C requirements of listing 12.04.

Paragraph B requires that an affective disorder result in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B).  Plaintiff did not meet the part B requirements because he had mild restriction in daily activities, marked difficulties in social functioning,[9] moderate difficulties with concentration, persistence or pace, and no episodes of decompensation:

---

[9]A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see Sullenger v. Commissioner*, 255 F. App'x 988, 993-94 (6th Cir. 2007).

In his activities of daily living he has mild restriction. The claimant is able to do most if not all the daily activities he chooses to do. He is able to clean up around his house, although he has a history of being sloppy. He helps his mother with the laundry, and can cook simple meals. Per the claimant's own testimony, his daily activities are maintained without direction or supervision. From a purely mental standpoint, he appears to independently initiate, and participate in activities of daily living appropriately, effectively, and on a sustained basis with no more than mild limitation.

In social functioning, the claimant has marked difficulties. The reasons for that conclusion are spelled out in greater detail here. The claimant has improved in the area of functioning since he attained age 18, in that he is better able to control his temper, and his behavior. That is supported by the fact that he has had no contact with law enforcement for a long period of time. He has been left with marked limitation in his ability to deal with other people, and that limitation has been incorporated into the claimant's residual functional capacity.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant is depressed, and has anxiety that is exacerbated when he has contact with other people. He testified about some memory problems that he had after having several concussions. The undersigned finds it reasonable to conclude that the claimant's abilities in this regard would be limited considering his depression and the effects of his other impairments.

As for decompensation, the claimant has experienced no episodes of decompensation.

(A.R. 30-31). The ALJ's part B findings are supported by more than substantial evidence.

The ALJ found that the medical evidence did not document mental impairments of listing- level severity, but failed to mention the part C requirements of listing 12.04:

In making this determination, the undersigned has considered the listings that pertain to the claimant's severe impairments. Despite those impairments, and their symptoms, the medical evidence does not document listing-level severity at any time relevant to this decision and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment. Also, none of his treating doctors at Touchstone, Forest View Hospital, Network 180, or anywhere else has concluded that his severe impairments were of the severity needed to establish that they met or equaled a listing at any time relevant hereto.

(A.R. 31). I find that any error with regard to part C was harmless because there is more than substantial evidence supporting the ALJ's finding that this administrative record fails to document mental impairments of listing-level severity. *See Rabbers*, 582 F.3d at 655-61.

Paragraph C of listing 12.04 contains the following requirements:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.      Repeated episodes of decompensation, each of extended duration; or

    2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). Part C(1) requires repeated episodes of decompensation of extended duration.[10] Plaintiff had no episodes of decompensation. (A.R. 31). Plaintiff did not satisfy part C(2) because there is no evidence of a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(c)(2); *see Gilbertson v. Astrue*, No. 09-1824, 2010 WL 5690391, at * 20 (D. Minn. 2010); *Corson v. Astrue*, 601 F. Supp.2d 515, 528-29 (W.D.N.Y. 2009). Plaintiff argues that the ALJ should have found that he met part (C)(3) which requires a "current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." A highly supportive living arrangement refers to "shelters or group homes, inpatient psychiatric treatment, or an inability to live on one's own." *Gonsalves v.*

---

[10] Repeated episodes of extended duration means at least three episodes during one year, or an average of one per four-month period, each lasting at least two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; *see Monroe v. Astrue*, No. 09-cv-3338, 2011 WL 98972, at * 8 (C.D. Ill. Jan. 12 2011); *Pugh v. Astrue*, No. 1:09-cv-112, 2010 WL 1544271, at * 6 (E.D. Tenn. Feb. 17, 2010).

*Astrue*, No. 09-181, 2010 WL 1935753, at * 4 (D. Me. May 10, 2010); *see Rosic v. Commissioner*, No.1:09-cv-1380, 2010 WL 3292964, at * 7 (N.D. Ohio Aug. 12, 2010); *Cannon v. Astrue*, No. 4:08-cv-160, 2010 WL 902485, at * 10 (E.D.N.C. Mar. 11, 2010). The record shows that, as an adult, plaintiff did not require a highly supportive living arrangement or a continued need for such an arrangement. Plaintiff testified that he was able to get along much better with his parents now that he was not living with them. (A.R. 590). He had stayed out of trouble with the police. He was living with a woman and her son and that they split the rent three ways. (A.R. 587-88). He testified that the woman and her son planned on moving soon. (A.R. 592). The day before his administrative hearing, plaintiff filed an application to live in an apartment. He testified that he intended to live in the apartment with his girlfriend and split the costs. (A.R. 593). Plaintiff's adult living arrangements do not fit within the "highly supportive" category. Plaintiff did not meet or equal the requirements of listing 12.04. I find no basis for disturbing the Commissioner's decision.

2.      Listing 12.10

The part B requirements of listings 12.04 and 12.10 are identical. Plaintiff does not satisfy the part B requirements of listing 12.10 for the reasons examined in the discussion of listing 12.04. Listing 12.10 does not have alternative part C requirements. The ALJ's findings that plaintiff did not meet or equal the requirements of any listed impairment as an adult are supported by more than substantial evidence.

**3.**

Plaintiff's remaining argument is as follows: "Based on the [ALJ's] own finding that Mr. Nikodem has a Marked impairment in social function and the Vocational Expert's testimony that a Marked impairment in dealing with supervisors eliminates all jobs, the [ALJ] improperly denied Mr. Nikodem benefits." (Plf. Brief at 20). This argument is not supported by any legal authority. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming that the issue had not been waived, it is meritless. Plaintiff has conflated distinct steps of the sequential analysis. Questions posed to the VE are generally relevant to step 5 of the sequential analysis.[11] *See Wright-Hines v. Commissioner*, 597 F.3d 392, (6th Cir 2010); *see also Anderson v. Commissioner*, No. 09-6370, 2010 WL 5376877, at * 1 (6th Cir. Dec. 22, 2010); *Nejat v. Commissioner*, 359 F. App'x 574, 578 (6th Cir. 2009). Child's SSI benefits claims are decided at or before step 3 of the sequential analysis. Thus, plaintiff's argument is necessarily limited to an attack on the ALJ's finding that he was not disabled as an adult.

The paragraph B and C criteria used to rate the severity of mental impairments at steps 2 and 3 of the sequential analysis "are not an RFC assessment." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various

---

[11]VE testimony is not required at step 4 of the sequential analysis, but the ALJ is permitted to utilize VE testimony to assist him in determining whether a clamant is capable of performing his past relevant work. *See Cruse v. Commissioner*, 502 F.3d 532, 545 (6th Cir. 2007); 20 C.F.R. § 416.9560(b)(2). No VE assistance was necessary at step 4 in this case because plaintiff did not have past relevant work.

functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments . . . ." *Id.* at 4; *see* 20 C.F.R. § 416.945(c); *Johnson v. Astrue*, No. 3:09-cv-492, 2010 WL 3894098, at * 8 (M.D. Fla. Sept. 30, 2010); *Olatubosun v. Astrue*, No. 8:09cv376, 2010 WL 3724819, at * 13 (D. Neb. 2010).

RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 416.945(a)(1); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact made by the ALJ on the record as a whole. *See Coldiron v. Commissioner*, 391 F. App'x at 439. The record documents plaintiff's problems living with his parents and his social interactions with others before age eighteen. The ALJ's RFC finding addressed plaintiff's ability to perform the requirements of work on and after the date he reached age eighteen. The ALJ found that plaintiff's mental impairments limited him to "performing unskilled work that did not involve frequent contact with the general public, but he could perform work with small and familiar groups." (A.R. 31). This finding is supported by substantial evidence, and it more than adequately takes into consideration plaintiff's limitations in his ability to interact with others during the period at issue. Plaintiff's argument that "Mr. Nicodem has never had a problem with the general public" (Plf. Brief at 21) does not undermine the ALJ's decision. If anything, it suggests that the ALJ's RFC finding may have been too restrictive, and that there would likely be additional jobs beyond the more than 85,400 identified by the VE that the hypothetical person would be capable of performing.

Plaintiff states that "familiarity breeds contempt," that his real problem was dealing with small, familiar groups, and that by implication, he would have difficulty with supervisors. (Plf. Brief at 21-22). The ALJ's RFC determination excluding such restrictions is supported by

substantial evidence. The record shows that plaintiff was able to get along with friends and work as part of a team. He had no history of confrontation with work supervisors. I find no error.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   March 18, 2011            /s/  Joseph G. Scoville_____
                                               United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).